323 So.2d 788 (1975)
STATE of Louisiana
v.
George Henry ALFORD and Gayle Baker a/k/a Gayle Alford.
No. 56226.
Supreme Court of Louisiana.
December 8, 1975.
Dissenting Opinion December 19, 1975.
*789 Joseph D. Guerriero, Monroe, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiffs-respondents.
CALOGERO, Justice.
Defendants George Henry Alford and Gayle Baker were charged in a bill of information with possession of marijuana, a violation of La.R.S. 40:966. On April 1, 1975, they were tried by a judge and found guilty. George Alford was sentenced to pay a fine of $300 and court costs and to serve thirty days in jail, or, in default of the payment of the fine, to serve an additional sixty days. Gayle Baker was sentenced to pay a fine of $150 and costs, or in default, thirty days. We granted certiorari to review the correctness of the trial judge's denial of defendants' motion for a directed verdict. We now reverse.
In the early morning hours of January 8, 1975, members of the Ouachita-Morehouse Narcotics Strike Force raided a home in West Monroe to execute a previously-issued search warrant. Named in the warrant was Charles Morgan, who rented and occupied the house in question. The oath in support of the search warrant recited that an informant had made a purchase of the illegal substance from Mr. Morgan at his house. Neither the search warrant nor the affidavit mentioned either of the defendants herein. The officer who conducted the search, Detective Pickens, testified that he had never heard of these two defendants before the search. When the officers arrived at the house, it was unoccupied. The search commenced and a small amount of marijuana was found hidden in several locations throughout the house. Also two prescription bottles, in the names of "Gayle Alford" and George Alford, respectively, were found in one of several cardboard boxes in a kitchen closet. No illegal drugs were found in the bottles.[1]
After the search was completed, officers heard a car pull into and out of the driveway. They pursued the car but were not able to stop it until it was three-fourths of a mile from the house, because, as Detective Bougere testified,
"We had some difficulty. We had to move some [police] cars out of the way so we could pursue it in a marked unit where we could stop the vehicle."
He testified that he had no difficulty apprehending the vehicle and that when he arrested the two defendants who were in the car that they were "very cooperative." They volunteered, he said, that they had been staying at the Morgan home "for approximately three weeks and that was all, no more than three weeks." [2] The defendants and their vehicle were searched.
*790 It is undisputed that no marijuana was found on the persons of the two defendants or in their car. No evidence was introduced to prove that any of the belongings in the house were owned by defendants. They were not at the house at the time it was searched. They were not arrested at the house. They were not seen in the house at any time by any witness. The state did not attempt to prove that they knew, or were in any way associated with Charles Morgan, who rented the house. Only two scraps of evidence were even introduced to link defendants to the house: the two prescription bottles which bore the names of Gayle and George Alford, respectively; and the uncorroborated statement by a policeman that defendants had volunteered that they had lived in the Morgan home for an undesignated threeweek period.
The plastic bags containing the microscopic gleanings produced by the search were so well hidden in the house that their presence probably would not have been known to a continuous resident of the house, much less a temporary guest. The marijuana gleanings (along with cigarette papers, pipes, and other smoking paraphernalia) were in these locations: in a sealed coffee can on top of the refrigerator in the kitchen; in an aspirin bottle and bags in a closed metal file box which was on the top of a chest of drawers in a bedroom closet; in a pipe found in the kitchen in a cardboard box which was piled beside several other cardboard boxes. A "larger" amount of marijuana, weighing nine grams (approximately one-third of an ounce), was found in a plastic sack on a shelf of a serving tray inside a kitchen cabinet under the sink.
The state contends that it had presented evidence of constructive possession, making proper the judge's denial of defendants' motion for a directed verdict.
Under our law, an individual need not personally possess a drug to violate a law against its illegal possession, because constructive possession is sufficient. But for a person to constructively possess a drug it must be subject to his dominion and control, and he must have knowledge of its existence. If the state has presented some evidence of these elements, then this Court will not reverse a trial court's denial of defendants' motion for a directed verdict. State v. Ford, 315 So.2d 276 (La. 1975); State v. Douglas, 278 So.2d 485 (La.1973).
In our recent unanimous opinion in State v. Cann, 319 So.2d 396 (La.1975), we reversed a defendant's conviction for constructive possession of marijuana in a similar case. Defendant Cann was in the apartment of another person when police came to execute a search warrant. The officers found six bags of marijuana in plain view and a pound of marijuana and eight bags in a box in the kitchen, as well as gleanings in the garbage outside the apartment. However, no marijuana was found on the person of the defendant or in the bedroom where he was found. This Court held that defendant did not constructively possess the marijuana which was in the apartment because "the mere presence of someone in the area where the controlled dangerous substance is found, or the mere fact that someone knows the person who is in actual possession of the controlled dangerous substance is insufficient to constitute constructive possession by that person." 319 So.2d at 397. Again, we stated that "[i]n order to convict a person on the basis of constructive possession, something more than mere presence in the area where the drug is found or mere association with the person in actual custody of the drug must be shown." 319 So.2d at 397-98. In that opinion, this Court reviewed federal and state jurisprudence in *791 this area to determine what facts have been found to support findings of constructive possession.
In the case before us now, the state presented evidence tending to prove that 1) less than an ounce of marijuana was found in a house rented by someone other than defendants; 2) that defendants had stayed in the house for several weeks; and 3) that defendants drove into the driveway of the house, pulled out, and continued down the street.
However, the state offered no evidence of the following: 1) that these defendants knew or had reason to know there was marijuana in the house; 2) that these defendants knew or were associated with Charles Morgan, who rented the house; 3) that defendants had been in the home on the morning of or the day preceeding the search; 4) that anyone other than Charles Morgan had access to the home and its contents; 5) that any drugs were found on the persons of these defendants, in their automobile, in the suitcases in the bedroom (assuming what is unproven, that those suitcases belonged to defendants), or in the two prescription bottles bearing the names Gayle and George Alford, respectively; 6) that these defendants in any way had any control over the marijuana that was found in the apartment.
We find that the state presented no evidence that either defendant had or shared dominion or control of the marijuana found in the house which would constitute their constructive possession of the illegal drug. The motion for a directed verdict should have been granted.
For the reasons assigned, the convictions and sentences of these two defendants are reversed and set aside, and the case is remanded to the trial court for proceedings consistent with this opinion.
SANDERS, C. J., and MARCUS, J., dissent.
SUMMERS, J., dissents and will assign reasons.
SUMMERS, Justice (dissenting).
Defendant George Henry Alford and Gayle Baker, also known as Gayle Alford, were charged by bill of information with possession of marijuana contrary to Section 966 of Title 40 of the Revised Statutes. They were found guilty in a bench trial. George Alford was sentenced to pay a fine of $300 and costs and to serve 30 days in jail. Gayle Alford was sentenced to pay a fine of $150 and costs, and in default of the payment of the fine to serve 30 days in jail.
The defendants applied for writs which this Court granted.
The sole issue for our determination is the correctness of the trial judge's denial of the defendant's motion for a directed verdict. There is no evidence in this record except that presented on behalf of the State.
Detective Kelly of the Ouachita-Morehouse Parish Strike Force made oath on January 2, 1975 that within 48 hours prior to that date he had received information from a confidential informant that Charles Morgan was "dealing marijuana." At that time the informant and his vehicle were searched and no drugs were found. By prior arrangement, while the informant went to Morgan's residence, he was kept under surveillance by Detective Kelly. The informant entered the house and immediately returned with a quantity of marijuana which he said he had purchased from Morgan.
Based upon this affidavit, the district judge issued a warrant to search for marijuana the premises of "A grey siding house located at 1015 Dean Chapel Road in Ouachita Parish outside of West Monroe, Louisiana and occupied by a white male known as Charles Morgan."
*792 Armed with the search warrant Detectives Dan ickens and Frank Bougere, assigned to the Ouachita-Morehouse Parish Strike Force, searched the premises at 1015 Dean Chapel Road in the early morning hours of January 8, 1975. The house, which was then rented to Morgan, was unoccupied at the time.
In rapid succession they jointly searched for and found a one-pound size Folger coffee can on top of the kitchen refrigerator in plain view. The can contained two cigarette rolling devices, three packages of cigarette papers and one clear plastic bag containing marijuana seeds.
On a chest of drawers in a walk-in closet between two bedrooms they found a metal box containing six empty clear plastic bags, one aspirin bottle containing marijuana seeds, one brown paper bag containing three clear plastic bags in which marijuana was present, and a large plastic bag enclosing smaller plastic bags with marijuana seeds and Top Bond cigarette papers in them.
A serving tray was discovered in a lower kitchen cabinet. A plastic bag with marijuana, a cigarette rolling device and one package of Job Brand cigarette papers were in plain view on the tray.
In a closet off the kitchen in a cardboard box they found pipes and two bottles with prescription labels bearing the names of Gayle and George Alford, respectively. One of the pipes contained gleanings of marijuana. Two open suitcases were found in a bedroom, one containing a woman's clothes.
Expert testimony was presented by the State to establish that the substances seized were marijuana.
While the search was being conducted police in two marked police cars joined the detectives. These cars were parked near the house which was set back some distance from the public street. Toward the end of the search, one of the officers noticed an orange Volkswagen entered the driveway and approach the house. Before reaching the house, the occupants of the Volkswagen apparently observed the marked police cars for the first time. They then came to an abrupt stop, backed rapidly into the street and headed south at a high rate of speed.
Detective Bougere and Trooper Warner got into a State police vehicle parked nearby and drove in pursuit of the Volkswagen. After a chase of about three-fourths of a mile, the Volkswagen was stopped and the defendants were identified and arrested. They were then given the Miranda warnings.
In a conversation between the officers and defendants which followed, the officers noted that their search revealed open suitcases present in one of the bedrooms of the house at 1015 Dean Chapel Road indicating that someone had been staying there for a short length of time. They also remarked that one of the suitcases contained a woman's clothes. Defendants then acknowledged to Detective Bougere that they had been living at the house for approximately three weeks.
The pervading presence of marijuana and marijuana paraphernalia in the house; the bottles with prescription labels in their names; the fact that only one woman resided there; the presence of the opened suitcases, one containing a woman's clothes, confirming the transient character of their residence within the house where the marijuana and marijuana paraphernalia were found; the significant fact that upon observing the police cars at the house defendants fled the scene prior to their apprehension; and their admission that they had been staying in the house for three weeks presents incriminating facts which, though circumstantial, furnished adequate evidence upon which the trial judge could infer that defendants knew of the presence of marijuana and shared the control over the substance with Morgan. From these unrefuted and unrebutted facts the trial *793 judge could properly conclude that defendants were placed "within such close juxtaposition to the narcotic drugs as to justify the jury (trial judge) in concluding that the [drug] was in [the(ir)] possession." Hunt v. State, 158 Tex.Cr.R. 618, 258 S.W.2d 320.
This Court has consistently read Article 778 of the Code of Criminal Procedure to mean that on review of the denial of a directed verdict this Court cannot upset the findings of the trier of fact on issues bearing upon guilt or innocence, unless there is no evidence at all to prove the crime charged or an essential element thereof. Thus, if there is some evidence, no matter how little, the determination of the trier of fact must stand. State v. Douglas, 278 So.2d 485 (La.1973) and cases following.
Defendants were charged under Section 966(C) making it unlawful "... for any person knowingly or intentionally to possess a controlled dangerous substance," in this case marijuana.
By repeated decisions of this Court it has been held that guilty knowledge is an essential element of the crime of possession. State v. Knight, 298 So.2d 726 (La. 1974); State v. Porter, 296 So.2d 302 (La.1974); State v. Smith, 257 La. 896, 244 So.2d 824 (1971); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Williams, 250 La. 64, 193 So.2d 787 (1967). Guilty knowledge and intent, though a question of fact, need not be proven as a fact, it may be inferred from the circumstances of the transaction. La.R.S. 15:445. "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent. ..." La. R.S. 15:446.
And one need not personally, actually and physically possess the controlled dangerous substance to violate the prohibition against possession; constructive possession is sufficient. The rule is set forth in State v. Smith, 257 La. 1109, 245 So.2d 327 (1971);
"A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possesion of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control of it." State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). See also State v. Knight, 298 So.2d 726 (La. 1974); State v. Porter, 296 So.2d 302 (La.1974); State v. Williams, supra; Spataro v. State, 179 So.2d 873 (Fla.1965).
The law in this State, and generally elsewhere, recognizes that flight is a legitimate ground for the inference of guilt. Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L.Ed. 528 (1896); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966). And evidence to show that the accused fled the scene of the crime to avoid apprehension after commission of the crime is admissible to show consciousness of guilt, and it is immaterial whether flight occurs before formal charges are filed, before arrest, after arrest and admission to bail, or after arrest and escape from jail or from the custody of law enforcement officers. State v. Neal, 231 La. 1048, 93 So.2d 554 (1957). See also State v. Lane, 292 So.2d 711 (La.1974); State v. Nelson, 261 La. 153, 259 So.2d 46 (1972).
Upon these facts and principles of law, the trial judge correctly denied the motion for a directed verdict.
I cannot agree that there was no evidence at all upon which the trial judge could conclude that these defendants constructively possessed marijuana. This Court cannot constitutionally decide the guilt or innocence of persons charged with crime. Only questions of law are reviewable. La.Const. art. V, § 5(C) (1974).
I respectfully dissent.
NOTES
[1] There was some conflict in the evidence as to whether any marijuana was found in the cardboard box in which the prescription bottles were found but, looking at the evidence in the manner most helpful to the state, four smoking pipes were found in the same box. Only one of the pipes contained marijuana, and it contained, according to the state's ex-pert, "not over two hundred milligrams" of marijuana, an amount which was "microscopic in nature."
[2] It might be noted that in brief defendants contend that, as part of their case, they took the stand to say that they had never lived at the Morgan home and had never said that they had lived there. For purposes of consideration of the motion for a directed verdict, however, we must accept as true all of the state's evidence including the police officer's testimony that defendants admitted living in the house.