465 So.2d 800 (1985)
STATE of Louisiana, Appellee,
v.
Thomas J. ABRAM, Appellant.
Nos. 16543-KA, 16544-KA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 31, 1985.
*802 Hunter & Scott by Louis G. Scott, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
In these consolidated cases the defendant, Thomas J. Abram, was found guilty in a bench trial of possession of pentazocine in violation of LSA-R.S. 40:967 (# 16,543-KA) and possession of marijuana with intent to distribute in violation of LSA-R.S. 40:966 (# 16,544-KA). He was sentenced to two years at hard labor on the conviction of possession of pentazocine and to eight years at hard labor on the conviction of possession of marijuana with the intent to distribute. The sentences were ordered to be served consecutive. He appeals his convictions and sentences relying on six assignments of error. We affirm.

Facts
At 10:48 p.m. on March 21, 1983 Detective Robbie Freeman of the Metro Narcotics Unit obtained a search warrant for a residence located at 1921 Samuel Drive in Monroe. The affidavit in support of the warrant is based on information Freeman obtained from a confidential informant. The informant told Freeman he had been inside the Samuel Drive residence within the past 24 hours and knew the residence to be that of a female known to him as Darlene and a male known to him as T.J. Abrams. The informant stated he had observed approximately one pound of marijuana in Abrams' possession and had purchased marijuana from Abrams.
The warrant was executed at approximately 11:15 p.m. the same evening. Upon entering the residence officers from the Metro Narcotics Unit arrested defendant and a female companion, Darlene Bolden. After reading defendant his Miranda rights the officers asked him if there was any marijuana in the residence. Defendant pointed to a wooden container on the coffee table in which a small quantity of marijuana was found. In a subsequent search of the residence the officers found a total of 14.7 ounces of marijuana and three Talwin tablets.[1] Other evidence seized in the search included a pistol containing nine live rounds, $260.00 in cash found on defendant's person, $40.00 in cash laying on the coffee table, a dog's medical records made out in defendant's name, a prescription pill bottle in defendant's name containing ampicillin, a set of weighing scales and assorted marijuana packaging supplies and smoking paraphenalia. After conducting the search the officers took Ms. Bolden from the apartment first. Before defendant was removed the officers obtained from him a key to the residence which was used to lock the door.
Ms. Bolden was not tried with the defendant.[2] At defendant's trial it was established the residence at 1921 Samuel Drive was rented in Ms. Bolden's name and that defendant, together with his wife, had a residence in a different section of Monroe. The defense raised by defendant is that he was a mere visitor to Ms. Bolden's residence and did not have dominion or control over the illicit substances found there.

Assignment No. 1
By this assignment defendant contends the trial court erred in not suppressing the dog's medical records seized from the Samuel Drive residence. He argues these records were illegally seized since they *803 have no relationship to any crime or criminal activity.
While in the course of executing a search warrant a peace officer may seize, in addition to the contraband or other evidence described in the warrant, things tending to prove the commission of any offense. LSA-C.Cr.P. art. 165; State v. Feeback, 414 So.2d 1229 (La.1982); See also LSA-C.Cr.P. art. 161.[3]
In light of the defense raised by defendant, we find no error in the trial court's refusal to suppress the dog's medical records. The records tend to show that defendant was more than a mere casual visitor to Ms. Bolden's residence. This record is relevent to the ultimate issue of fact of whether defendant had dominion and control over the contraband.
This assignment of error lacks merit.

Assignment No. 2
By this assignment defendant contends the trial court erred in denying his motion for a mistrial. Defense counsel moved for a mistrial when he learned that the police officers testifying for the state were refreshing their memories from the same police file. Each officer that testified apparently passed the file to another officer when he was excused from the stand. Defendant argues this conduct violated the sequestration order because it enabled officers testifying later in the trial to learn the testimony of those testifying earlier.
The sequestration order is authorized by LSA-C.Cr.P. art. 764 which provides:
Art. 764. Exclusion and conduct of witnesses
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The conduct of which defendant complains does not violate the sequestration order. The officers were not discussing the facts of the case nor the testimony of any witnesses.
The testifying officers were authorized to use police reports and other documents contained in the file to refresh their memories on the witness stand, even if the documents used were compiled by another officer. LSA-R.S. 15:279;[4]State v. Barnes, 257 La. 1017, 245 So.2d 159 (1970); State v. Knapp, 378 So.2d 911 (La.1979).
This assignment of error has no merit.

Assignment No. 3
By this assignment defendant contends the trial court erred in accepting the state's witness, Linda Armstrong, as an expert in the detection and identification of pentazocine. Defendant argues that Ms. Armstrong's testimony indicates she has insufficient training in the detection of pentazocine and she had not previously identified the substance in court.
In State v. Lawson, 393 So.2d 1260 (La. 1981) the supreme court summarized the rules relative to the qualification of expert witnesses as follows:
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express *804 an opinion, and before any witness can give evidence as an expert, his competency so to testify must have been established to the satisfaction of the court. La.-R.S. 15:466. We have consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Drew, 360 So.2d 500 (La. 1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979); State v. Lewis, 353 So.2d 703 (La. 1977).
Ms. Armstrong has been employed as an evidence analyst at the North Delta Crime Lab for approximately ten years. During that period of time she has performed hundreds of analyses for the detection of narcotics and other substances and has qualified as an expert in this area in Louisiana courts from fifty to one hundred times. She has a degree in medical technology and since graduating from college has attended seminars on drug analysis in which pentazocine was one of the drugs she was trained to detect. Although she has never testified as to the presence of pentazocine in court, she has analyzed substances for the presence of pentazocine at least ten to fifteen times.
This assignment of error lacks merit.

Assignments No. 4, 5 and 6
By these assignments defendant contends there was insufficient evidence to support his convictions and the state failed to establish a sufficient connection between him and the evidence seized for that evidence to be admissible. The sole issue raised by the assignments is whether the state proved that defendant possessed the substances for which he was convicted.
The standard of appellate review of the sufficiency of the evidence is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 420 So.2d 663 (La.1982); State v. Johnson, 457 So.2d 732 (La.App. 2d Cir. 1984).
One need not physically possess a controlled dangerous substance to violate the prohibition against possession; constructive possession is sufficient. A person is in constructive possession of the controlled dangerous substance if it is subject to his dominion and control and he has knowledge of its presence even though it is not in his physical possession. State v. Alford, 323 So.2d 788 (La.1975); State v. Edwards, 354 So.2d 1322 (La.1978). However, the mere presence of someone in the area where the controlled dangerous substance is found, or mere association with the person found to be in possession of the contraband, is insufficient to constitute constructive possession. State v. Cann, 319 So.2d 396 (La.1975); State v. Dunn, 446 So.2d 829 (La.App. 2d Cir.1984); State v. Alford, supra.
Since none of the contraband seized from the Samuel Drive residence was found in defendant's physical possession it was the state's burden to prove that defendant had sufficient dominion and control over the contraband to be in constructive possession. The state sought to discharge this burden by Ms. Bolden's testimony and by circumstantial evidence tending to show that defendant was more than a mere casual visitor in her residence.
Ms. Bolden testified that at the time of their arrest she was having an affair with defendant. She stated that defendant rented the Samuel Drive residence for her, had a key to the residence and spent most of his time, including almost every night, there. She further testified the marijuana, pentazocine, scales, packaging supplies and paraphenalia found in the residence were brought there by defendant and belonged to him. She testified the defendant sold marijuana at her home.
The circumstantial evidence presented by the state included the testimony of various officers on the scene and various items *805 seized at the residence including the dog's medical records and prescription bottle in defendant's name and the pistol. Officers on the scene testified that keys to the residence were in defendant's possession and that defendant admitted to them the pistol was his. The officers also stated they found a set of tires at the residence and defendant admitted to them the tires were his.
To rebut the state's evidence defendant took the stand in his own behalf. He admitted that he was having an affair with Ms. Bolden but denied that he rented the Samuel Drive residence for her. He stated that he had no keys to the residence, only went there two or three times per week and never spent the night there. Defendant denied that the contraband, packaging supplies and paraphenalia were his but he admitted that he owned the tires. He offered various excuses for why the tires, dog's medical record and prescription bottle were in the residence. His testimony on the pistol was somewhat equivocal. He knew the pistol was in the residence and stated that a friend of his brought it there. He claims, however, that his friend brought it there for Ms. Bolden's benefit. Defendant also admitted that he smoked marijuana with Ms. Bolden in the residence.
To support his testimony defendant called his wife to the stand. Mrs. Abram stated she was unaware of defendant's affair with Ms. Bolden. She testified that during the period of time the affair was allegedly being conducted, defendant was only absent from their residence occasionally and he was never gone all night. Other witnesses called by defendant stated that to the best of their knowledge defendant was at home with his wife most of the time. These witnesses acknowledged, however, that they were not in a position to know whether defendant was having an extramarital affair.
Factors to consider in determining when a person arrested in the residence of another is in constructive possession of contraband found in the residence are: (1) whether the accused knew contraband was in the residence; (2) whether the accused had been in the residence on prior occasions; (3) how long the accused was in the residence prior to his arrest; (4) whether the accused had access to the residence; (5) whether the residence was frequented by drug users; (6) whether there are indications of recent drug use; (7) whether any contraband was found on the person of the accused; and (8) whether the accused had any control over the contraband found in the residence. State v. Cann, supra; State v. Alford, supra; State v. Dunn, supra.
Ms. Bolden's testimony that the controlled dangerous substances were brought to the residence (where they were seized) by the defendant and that they belonged to him and were sold from the residence by him is corroborated by substantial circumstantial evidence. By his own admissions it was established that defendant had a close relationship with Ms. Bolden, spent substantial time at the residence and had smoked marijuana with Ms. Bolden. The testimony of the police officers established that defendant had a key to the residence and he was under investigation for distributing marijuana from the Samuel Drive residence. One of defendant's witnesses, Melvin Cooper, admitted that he had purchased marijuana at the residence but claims he did so from Ms. Bolden. Cooper is defendant's first cousin. We further note that partially smoked marijuana cigarettes were found in the residence. In light of the strong showing on these factors, the failure to find marijuana on defendant's person was not fatal to the state's case.
Defendant's connection with the pentazocine is somewhat more tenuous. While most of the above discussed factors are relevant to a finding of constructive possession of this substance, defendant denied having any knowledge that the Talwin tablets were in the residence. The only evidence directly connecting defendant with the pentazocine is Ms. Bolden's testimony. She testified the defendant showed her these pills and told her he had put the *806 pentazocine between the mattresses on their bed, where she later saw it while making up the bed. Although he believed that Ms. Bolden was being less than truthful as to some parts of her testimony, the trial judge obviously found her testimony was more credible than defendant's. Defendant argues this finding is erroneous and his convictions must be overturned because the state knowingly allowed Ms. Bolden to perjure herself on the witness stand. See State v. Square, 257 La. 743, 244 So.2d 200 (1971).
We have carefully reviewed the entire record, including Ms. Bolden's testimony, and find no indication that the state knowingly allowed her to perjure herself.[5] Most of the instances of Ms. Bolden's alleged perjury pointed to by defendant are merely instances where her testimony conflicts with his and that of other defense witnesses. Defendant has failed to show it was Ms. Bolden who was not telling the truth. Defendant also points out that Ms. Bolden testified on direct examination that she had made no deals with the state in return for her testimony whereas a motion for continuance indicates that some type of agreement was made.[6] We find no indication that the state knowingly allowed Ms. Bolden to make any false statements pertaining to an agreement. Ms. Bolden was asked by the prosecutor if he had made any deals or promised her any leniency contingent upon her testimony. After she answered no, the prosecutor attempted to further pursue the subject matter. Defendant objected to this line of questioning and the objection was sustained. The defendant has not established that Ms. Bolden's testimony, that she had obtained no agreement of leniency from the prosecutor in return for her testimony, was false.
We find no manifest error in the trial court's finding that Ms. Bolden's testimony was more credible than defendant's. Under the Jackson v. Virginia standard there was sufficient evidence to support defendant's convictions.
These assignments of error lack merit.
Defendant's convictions and sentences are AFFIRMED.
NOTES
[1] Talwin contains pentazocine.
[2] Ms. Bolden had not been tried at the time of defendant's trial.
[3] art. 161. Property subject to seizure

A judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the court which:
(1) Has been the subject of theft;
(2) Is intended for use or has been used as a means of committing of an offense.
(3) May constitute evidence tending to prove the commission of an offense....(emphasis supplied)
[4] § 279. Refreshing memory of witness

A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact. (emphasis supplied).
[5] Ms. Bolden's testimony was not a part of the record designated to be sent to this court by defendant. In order to adequately discuss defendant's argument we ordered a transcription of this testimony to be included in the record.
[6] At some point subsequent to her arrest and prior to defendant's trial, Ms. Bolden fled the state and was charged with two counts of bail jumping. The state apparently managed to find her and she agreed to return to Louisiana to testify at defendant's trial. The motion for continuance indicates that some agreement was made with Bolden's counsel but it does not indicate the nature of the agreement. There is no indication the agreement was with reference to the drug charges pending against Bolden as a result of the drugs seized upon which defendant's prosecution is based.