535 So.2d 929 (1988)
STATE of Louisiana, Appellee,
v.
Jimmie W. WHITE, Appellant.
No. 19,910-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Writ Denied February 17, 1989.
*930 M. Dale Peacock, Monroe, for appellant.
Mark Donahoe, Asst. Dist. Atty., William Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Monroe, for appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
After a trial by jury, defendant White was convicted of possession of phencyclidine (PCP) in violation of La.R.S. 40:966. He was sentenced to serve four years at hard labor. Defendant appealed his conviction and sentence, asserting eight assignments of error.
Factual Context
On November 12, 1985, at approximately 2:30 p.m., Deputies Carver and Fried of the Metro Narcotics Unit were patrolling in separate vehicles in the vicinity of Renwick Street in Monroe. They had received information from a confidential informant that narcotics were being trafficked in the area by an individual wearing a camouflage jacket, camouflage pants, and a black cap. As they approached the 3300 block of Renwick Street, they observed an individual fitting this description standing with a group of people. The individual looked up as the officers approached, seemed to recognize *931 Deputy Fried, and began walking west on Renwick Street toward a service station. When he reached the service station parking lot, he turned and began walking north.
Deputy Fried testified at trial that when he entered the service station parking lot in his vehicle the defendant began to run. The officer testified he then pursued him on foot through an empty lot overgrown with bushes and into a residential area, where the defendant slipped and fell in the mud. Fried testified that he drew his revolver for his own safety, as he did not know whether defendant was armed, and instructed him to roll onto his back and place his hands above his head. After putting handcuffs on defendant, the officer brought him to his feet and began walking him to his vehicle. Defendant cursed the officer and threatened to sue him for this treatment. Fried advised him of his rights and asked for his name. Defendant gave the officer a fictitious name, but it was later discovered that his true identity was Jimmy White.
Deputy Fried searched White's person for weapons and seized a glass tube with a red rubber stopper from the right lower pocket of his jacket. The tube contained a few drops of liquid and some tobacco gleanings, and when opened, gave off a pungent odor usually associated with Phencyclidine (PCP). At trial, the two officers testified that when the defendant was shown the tube, he claimed it was "nothing"; that there was not enough in the tube to test, and that they "didn't have anything on him."
Both officers testified that the defendant became extremely belligerent, and used abusive and obscene language toward them. He resisted arrest by trying to kick them, and they were eventually forced to restrain him on the hood of the car. Upon arriving at the jail, the defendant also attempted to attack Deputy Fried by butting him with his head.
The defendant's testimony at trial contradicted that of the two arresting officers. He testified that he knew Deputy Fried from a previous encounter in which he was searched for PCP, but none was found in his possession. He denied ever running from the officers, and claimed he had never seen the glass vial containing the PCP residue before it was taken from his pocket by the officers. The night of his arrest was the first time that year he had worn his camouflage jacket, he said, and other members of his family had previously worn it on several occasions throughout the year.
He also claimed that even though he did not resist the officers, they treated him very roughly. He said they cursed him, lifted him by his handcuffs, and later banged his head against the hood of the car. As a result, he said he sustained an eye injury and coughed up blood while in jail. He denied making the statement that there was not enough evidence to be tested.
Defendant's brother and sister both corroborated defendant's testimony concerning defendant's jacket.
The contents of the glass tube were tested and found to contain PCP, a Schedule I controlled dangerous substance. Since there was only a residue of the PCP in the tube, it was consumed in the state's testing process. On November 24, 1985, the assistant district attorney filed a bill of information charging defendant with possession of PCP, in violation of La.R.S. 40:966. Trial took place and defendant was found guilty as charged. On December 4, 1987, after reviewing a pre-sentence investigation report, the judge imposed a sentence of four years at hard labor, and this appeal followed.
Assignment of Error No. 1
The trial court erred in denying defendant's motion to quash the prosecution after the State stipulated on February 9, 1987, that it had consumed, during testing, the only criminal evidence of PCP, which stipulation occurred after the defendant had requested to have the alleged PCP examined by an independent expert.
In his motion to quash, defendant alleged that in answer to discovery requests, the State allowed the defense to view its evidence, *932 and on February 5, 1987, counsel for defendant was told by the lab technician that all of the evidence (allegedly PCP) had been removed from the tube for testing. On February 9, the defendant filed a motion requesting the appointment of an independent expert to examine this evidence and was told that it was totally consumed in the testing process. It is thus argued that defendant's ability to present a defense was so detrimentally affected by the State's action in consuming all of the evidence as to require quashing the bill of information.
The motion to quash was argued on February 9, 1987, and the State stipulated that the tube's contents had been consumed during testing. The judge denied the motion, and in a Per Curiam filed in response to defendant's assignments of error, noted that it was not the State's fault that all the evidence had been consumed in testing. Defendant now complains that this denial was error, as it denied him his constitutional right to present a defense, citing Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) and State v. Hamilton, 441 So.2d 1192 (La. 1983).
At trial, Linda Armstrong, criminalist with the North Louisiana Crime Laboratory, testified as an expert in the analysis of controlled dangerous substances on behalf of the State. She stated that she received and analyzed the contents of the tube taken from defendant and determined that it contained PCP. She stated that there was no liquid residue remaining in the tube after running two tests (gas chromatographs and GC Mass spectrometer confirmation).
Defense counsel argues that some of the substance could have been preserved, so that it could have been independently examined and tested by an expert for defendant, by adding three times the amount of base and chloroform to the residue before conducting the tests. However, when asked why it was necessary to consume all of the PCP in testing, Ms. Armstrong responded that since such a small amount was present, adding more base and chloroform would have diluted the substance to such an extent that determination of its identity might not have been possible.
This assignment of error is without merit. It is true that in cases charging possession of a prohibited substance, where the guilt or innocence of the accused depends upon the identification of the substance in the State's possession as contraband, the substance should be made available to the defendant for inspection and analysis. State v. Migliore, 261 La. 722, 260 So.2d 682 (La.1972). However, this right is contingent upon the existence of a sufficient amount of the substance to make an additional examination by defendant possible. Id. Moreover, the trial judge is vested with great discretion in determining whether, in advance of trial, the defendant should be granted the right to an independent examination of the contraband drug in the State's possession. State v. Jones, 345 So.2d 1161 (La.1977).
The defendant does not complain of error in the State's test results, and Ms. Armstrong testified that they conclusively established the identity of the substance as PCP. Unlike the situation in State v. Hamilton, supra, defendant was not improperly curtailed in his presentation of favorable evidence on the only disputed issue. Moreover, the record discloses a reasonable explanation for the State's refusal to make the substance available to defendant for independent testing. In view of Ms. Armstrong's testimony that the substance was necessarily consumed in the State's testing process, we find no error in the judge's denial of the motion to quash.
Assignment of Error No. 2
The jury erred in finding the defendant guilty of possession of PCP where there was insufficient evidence to support the verdict.
The standard of review for sufficiency claims is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct.
*933 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court stated:
But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. (citation omitted).... Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. Jackson v. Virginia, supra 99 S.Ct. at p. 2789.
La.R.S. 40:966 provides, in pertinent part, that:
"It is unlawful for any person to knowingly or intentionally possess a controlled dangerous substance classified in Schedule I...."
Thus the elements of the offense charged are possession of PCP and guilty knowledge, or an intent to possess it.
Relying on State v. Trahan, 425 So.2d 1222 (La.1983), the defendant contends that evidence of such a small amount (a residue) of a controlled dangerous substance is insufficient to prove possession beyond a reasonable doubt, and thus to obtain a conviction. In Trahan, a case in which our Supreme Court reversed a conviction for possession of cocaine, the defendant's trailer was searched and police seized various drug paraphernalia, including a small glass vial containing a slight residue of cocaine. There was not enough cocaine residue to be weighed, and the substance was consumed in testing. The vial itself was misplaced before trial.
The court based its reversal of this conviction on the fact that the vial was found on a bedroom shelf of the trailer which one of the defendants had been renting for less than three years. At trial, this defendant testified that he knew nothing about the vial or its origin. Acknowledging that "constructive possession" can exist where an individual knowingly or intentionally exercises dominion and control over a drug, the court nevertheless stated that guilty knowledge is an essential element of the crime, and found that insufficient evidence had been presented to show this knowledge or intent.
The instant case is clearly distinguishable from Trahan. Here, the glass vial was found in the defendant's jacket pocket, in much closer proximity to him than on a bedroom shelf in a trailer shared with others. A rational trier-of-fact could reasonably have found that he was aware of the presence of this substance on his person.
Even though there is conflicting testimony, the evidence in the record, when viewed in the light most favorable to the prosecution, is sufficient to prove all elements of this offense. When the officers approached and were seen by defendant he began walking away, and ultimately fled. A defendant's flight may be evidence of consciousness of guilt and is one of the circumstances from which guilt can be inferred. La.R.S. 15:441; State v. Mills, 505 So.2d 933 (La.App.2d Cir.1987), writ denied, 508 So.2d 65 (La.1987); State v. Buckhalter, 480 So.2d 839 (La.App.2d Cir.1985).
The officers also testified that defendant stated that there was not enough in the vial to test and that they did not have any evidence against him when the contraband was taken from him. The jury could have reasonably chosen to believe the testimony of the officers rather than defendant's story. In light of the foregoing, and the evidence establishing the identity of the substance found in defendant's possession as PCP, there is sufficient evidence upon which to base this conviction.
Assignment of Error No. 3
The trial court erred in denying defendant's Batson v. Kentucky [476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] motion to quash the jury venire after the State, without stating its reason, peremptorily challenged the only three prospective black jurors available to the defendant, who is also black.
The record reflects that the defendant is black, and that the prosecutor peremptorily challenged three black veniremen, although a black was chosen as an alternate juror. After the entire jury had *934 been empaneled, defendant entered a Batson objection, which the trial judge overruled because each juror had not been individually challenged at the time of selection. The next day, defendant moved that the jury venire be quashed and for a mistrial due to the prejudicial composition of the jury.
Defendant was denied a hearing for the reason stated, but was allowed to proffer testimony that defendant is black and that three black jurors were peremptorily excused by the State. At this time, the State declined to come forward with a racially neutral explanation for the challenges, as it did not believe a prima facie showing of discrimination had been shown.
Counsel for defendant did not include in his designation of the record on appeal those portions of the record dealing with voir dire. However, in a per curiam response to this assignment, the trial judge explained that of the three blacks peremptorily challenged by the State, one had known the defendant "since he was a baby" and also knew members of his family, and another indicated that he would be extremely reluctant to vote for a guilty verdict.
The defendant has the burden in a Batson claim to establish a prima facie showing of purposeful racial discrimination in selection of a jury. In order to prevail, the defendant must first show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant is entitled to rely on the fact that those who are prone to discriminate may do so by exercise of peremptory challenges. The defendant must show, however, that these facts and any other relevant circumstances raise an inference that the prosecutor exercised peremptory challenges to exclude jurors on account of their race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a racially neutral explanation for challenging the jurors. Id.
In order to preserve the complaint that the prosecutor's use of a peremptory challenges was based on racial discrimination, the defense must make a timely objection. La.C.Cr.P. Art. 841. To be timely, the objection must be made before the entire jury is empaneled, so that the trial judge may correct the error and a reversal of a conviction may be avoided. Batson, supra; State v. Williams, 524 So.2d 746 (La.1988).
Defendant's Batson challenge was clearly untimely. The trial judge therefore did not err in refusing to quash the jury venire and/or grant a mistrial.
Assignment of Error No. 4
The trial court erred in denying defendant's challenge for cause of a juror who had been an auxiliary police officer for 23 years, causing the defendant to exercise one of his twelve peremptory challenges, all of which he had to exhaust in his futile attempt to prevent an all-white jury which eventually chose to believe the testimony of the three white police officers contrary to that of the black defendant.
Counsel for defendant asserts that he should have been allowed to challenge juror Joseph P. North for cause because he had been an auxiliary police officer for 23 years, and therefore he was not impartial. La.C.Cr.P. Art. 797(2).
During voir dire North expressed no reservation about his ability to serve as an impartial juror in this case. When questioned by the court, he stated that his experience as a reserve officer would not influence him in any manner, and that he felt certain he would be able to objectively weigh the evidence presented, rather than favoring the testimony of an officer over that of a layman. He further stated that his service ended over five years ago, and he had no opinion or impression of the defendant's guilt or innocence at that time.
Service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify challenge for cause; however, such association does not automatically disqualify a prospective juror. State v. Comeaux, 514 *935 So.2d 84 (La.1987); State v. Mitchell, 475 So.2d 61 (La.App. 2d Cir.1985). A prospective juror's association with law enforcement will disqualify him only if it is such that one might reasonably conclude that it would influence him in arriving at a verdict. Comeaux, supra.
The challenging party has the burden of showing that the prospective juror is likely to be influenced in reaching a verdict by his past associations. The trial judge possesses much discretion in appraising the impartiality of potential jurors, and his ruling will not be disturbed absent a clear showing of abuse of that discretion resulting in prejudice to the accused. Id.; Mitchell, supra.
In State v. Mitchell, supra, the trial court's refusal to excuse a reserve police officer for cause was reversed by this court. The voir dire transcript revealed that the officer served as a reserve police officer with the Monroe City Police Department and had done so for the past three years. He was working with the Monroe Police Department at the time of defendant's investigation by that Police Department, but said he was not personally involved in it and knew nothing about it. He also continued working for the Department for the duration of the trial.
In spite of his assurance that he would render a fair and impartial verdict, this court held that one serving in the capacity as an active or reserve peace officer at the time of the trial is too likely to be influenced as a juror by that association and should be disqualified from the jury.
Where a juror's association with law enforcement has ended by the time of trial, he has no personal knowledge of the case at hand, and he states that he can be impartial despite the prior law enforcement background, courts have generally held there is no abuse of discretion in denying a challenge for cause. State v. Jones, 474 So.2d 919 (La.1985), cert. den., 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). In this case, defendant has not shown that the trial judge abused his discretion in refusing a challenge for cause based upon this juror's experience as an auxiliary police officer five years before. This assignment of error is without merit.
Assignment of Error No. 5
The trial court erred in overruling defendant's objection to the admissibility of the alleged result of a gas chromatograph where the State failed to produce any evidence pertaining to the machine's reliability or any other factors which might support the reliability of the machine's reading.
By this assignment of error, defendant contends that the State should be required to show that the machine used to determine the identity of the substance in question was properly calibrated and tested and shown to be reliable. Defendant relies solely on jurisprudence involving DWI cases. He argues for the extension by analogy of numerous holdings requiring strict compliance with the officially promulgated procedures and techniques in the chemical analyses offered as evidence in those cases. The rationale underlying these cases has been the fact that when done according to promulgated regulations, intoxication test results can give rise to a practically conclusive legal presumption of guilt. See La.R.S. 32:662; State v. Goetz, 374 So.2d 1219 (La.1979). No such presumption arises in a controlled dangerous substance case.
Furthermore, the wording of the regulations involved, the Department of Public Safety intoxication test regulations, makes clear that they are designed and intended to make chemical analyses valid in DWI cases, and pertain only to tests of the person's bodily substances.
This assignment lacks merit.
Assignment of Error No. 6
The trial court erred in qualifying Linda Armstrong as an expert in detecting the presence of PCP when she could not give any evidence of any particular expertise in this area.
The test of competency for an expert witness is knowledge of the subject about which he or she is called upon to express an opinion. Before testifying as an expert, competency must be established *936 to the satisfaction of the court. La.R.S. 15:466. Competency to testify is a question of fact committed to the sound discretion of the trial judge, and his ruling in this regard will not be disturbed absent a manifest abuse of that discretion. State v. Drew, 360 So.2d 500 (La.1978), cert. denied 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979); State v. Abram, 465 So.2d 800 (La. App.2d Cir.1985), writ denied, 469 So.2d 983 (La.1985).
Ms. Armstrong testified that she has worked as a criminalist with the North Louisiana Crime Lab in West Monroe since April of 1974. Her duties are to receive evidence from various agencies in North Louisiana, to analyze it, and to report her findings to the court. She has a degree in Medical Technology from Northeast University and worked at Schumpert Hospital in Shreveport for two years before going to work for the crime laboratory. She has attended several seminars dealing with the analysis of controlled dangerous substances, including PCP. She is a member of the Louisiana Association of Forensic Scientists, the Southern Association of Forensic Scientists, and has attended meetings at the American Academy of Forensic Scientists. She has testified several hundred times regarding the analysis of various drugs, including PCP, in courts all over the state. She has also been qualified as an expert before.
In State v. Abram, supra, this court found Ms. Armstrong's qualifications adequate to qualify her as an expert in the detection and identification of Pentazocine, and we find no abuse of discretion in the trial judge's finding that she is also qualified to detect and identify PCP. This assignment of error is without merit.
Assignment of Error No. 7
The trial court erred in failing to give the defendant's special jury instruction regarding the legally rebuttal presumption in LSA-R.S. 15:432 that evidence under control of a party and not produced by him was not produced because it would not have aided him.
The trial court is obliged to charge the jury of the law which is applicable to the particular case. La.C.Cr.P. Art. 802. This article requires the trial judge to charge the jury, when properly requested to do so, concerning the law applicable to any theory of the defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984); State v. Dunn, 452 So.2d 304 (La.App.2d Cir.1984).
However, if the requested charge is not supported by the evidence, the trial court may properly refuse to include it. State v. Telford, 384 So.2d 347 (La.1980); State v. Lewis, 478 So.2d 665 (La.App.2d Cir.1985); State v. Birdsong, 452 So.2d 1236 (La. App.2d Cir.1984), writ denied 457 So.2d 1200 (La.1984). A requested special charge must also be wholly correct and pertinent, and the trial judge is not required to include the charge if it requires qualification, limitation, or explanation. State v. Smith, 414 So.2d 1237 (La.1982).
The requested jury charge at issue in this case is not supported by the evidence. The State did not fail to produce any evidence in its possession, since all of the PCP was consumed in testing. Thus, the trial court did not err by refusing the requested charge, and this assignment of error is also without merit.
Assignment of Error No. 8
The trial court erred in imposing an excessive sentence upon the defendant, a first offender.
Defendant claims that he should have received a probated sentence, or at least a less severe one, since he is a first felony offender. It is argued that his sentence of four years at hard labor is unconstitutionally excessive and constitutes cruel and unusual punishment.
Our review of a sentence which is alleged to be excessive is two-pronged. First, the record must reflect that the trial court took cognizance of the criteria set forth in La.C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance as long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1982). The important elements which should be considered are the defendant's personal *937 history (age, family ties, marital status, health, and employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App.2d Cir. 1988), writ denied 521 So.2d 1143 (La.1988).
The second prong of our review involves a determination of whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App.2d Cir.1983), writ denied 438 So.2d 1112 (La. 1983). A sentence is considered grossly disproportionate if, when considered in light of the harm done to society, it is so disproportionate as to shock one's sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
The trial judge has wide discretion in the imposition of sentence within the statutory limits, and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983). Moreover, a trial court is not required to render a suspended sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interests of the public and the defendant. State v. McKethan, 459 So.2d 72 (La. App.2d Cir.1984).
The trial judge stated for the record that he found no mitigating circumstances present in this case. He found that the defendant had a history of prior criminal activity, including a 1971 arrest for speeding and driving without a license; an arrest in 1984 for being AWOL from his service in the National Guard; another arrest in 1981 for driving with a suspended license, for which he was fined $30 plus costs, default 16 days; and a 1985 DWI charge which was later dismissed.
The judge also noted that there were still pending charges related to defendant's arrest, contemporaneously with the instant offense, for resisting arrest by flight, resisting an officer, disturbing the peace by using loud and profane language and possession of drug paraphernalia. He also noted that in May of 1987, after his arrest on the present charge, defendant was arrested for a total of nine charges by the Monroe City Police Department, including driving an unsafe vehicle, two counts of disturbing the peace, running a stop sign, no proof of insurance, revoked driver's license, failure to register a vehicle, interfering with an officer and simple battery on a police officer. The judge noted defendant was convicted of all of these charges and was sentenced to a total of 6 months in the Monroe City jail.
After reviewing defendant's pre-sentence investigation report and criminal record as stated above, the trial judge concluded that there was an undue risk that during a period of suspended sentence or probation defendant would commit another crime, that a lesser sentence would deprecate the seriousness of the offense, and that the foregoing outweighed the fact that this was defendant's first felony conviction.
The trial judge fully complied with La.C. Cr.P. Art. 894.1 and committed no abuse of discretion in sentencing defendant to serve four years at hard labor.
Conclusion
For these reasons, defendant's conviction and sentence are AFFIRMED.