617 So.2d 1319 (1993)
STATE of Louisiana
v.
Kenneth Earl BALTHAZAR.
No. CR92-1263.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1320 Clifford Royce Strider, III, Alexandria, for plaintiff-appellee State of La.
George Lewis Higgins, III, Pineville, for defendant-appellant Kenneth Earl Balthazar.
Before DOMENGEAUX, C.J., and GUIDRY and WOODARD, JJ.
DOMENGEAUX, Chief Judge.
Defendant, Kenneth Earl Balthazar, was charged by bill of information with possession of cocaine with intent to distribute, in violation of La.R.S. 40:967 A(1). Originally, defendant pled not guilty to the charge. However, after the trial judge's ruling denying defendant's motion to suppress, defendant entered a guilty plea and reserved the right to appeal the trial court's ruling on the motion to suppress, pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Defendant was given a suspended sentence of five years at hard labor, subject to certain probationary conditions. Defendant now appeals the trial court's ruling on the motion to suppress.
On the night of defendant's arrest, Alexandria City Police Officer Johnson was riding with Deputy Anders of the Rapides Parish Sheriff's Department when they received information about crack dealing from Detective Lampert, a narcotics officer with the Alexandria Police Department. The information indicated that two black males wearing orange baseball caps were standing in front of Rocky T's Fish Market, a known drug dealers' headquarters, selling narcotics. Detective Lampert did not inform Officer Johnson of the identity of his source.
*1321 The three officers proceeded to the fish market, though Officer Johnson could not say if Detective Lampert arrived at the same time, before, or after he and Deputy Anders arrived. As Johnson's police car pulled in the parking lot, defendant and the other subject began walking away in opposite directions.
Officer Johnson testified that he could not recall what he said to defendant. However, he would normally say something to the effect of, "I need to see you a minute," or "Could you come over here a minute, please." Defendant did not respond to Officer Johnson's request, but rather, he walked toward two automobiles parked near the front door of the fish market. Defendant walked around the front of the first automobile, then between the two automobiles, which were parked approximately four to five feet apart. The parking lot was a well lit area.
Officer Johnson noticed that defendant had his right hand in the front right pocket of his pants, and he was concerned about this, fearing weapons. The officer asked defendant to remove his hand from his pocket, but the defendant did not comply until he got between the two parked vehicles. Deputy Anders walked behind defendant, and Officer Johnson walked around the other end of the parked cars. Once between the cars, defendant removed his hand from his pocket, and clenched in his right fist were clear plastic sandwich bags containing "a white rock type substance." At this point, Officer Johnson was standing directly in front of defendant approximately three to five feet away. He saw defendant toss the bags toward his right, underneath one of the parked cars. Deputy Anders had defendant stop and get up against the car to detain him while Officer Johnson retrieved the bags, which were found to contain cocaine. Defendant was then placed under arrest. Officer Johnson testified that although he asked defendant more than once to remove his hand from his pocket, he never asked defendant to empty his pockets.
Defendant contends the trial judge erred in failing to grant his motion to suppress the cocaine seized at the time of his arrest. Defendant argues that when he walked between the two parked cars at the fish market followed by Deputy Anders and approached from the front by Officer Johnson, he was in effect "seized" and thus, under arrest for Fourth Amendment purposes. Therefore, his arrest was without probable cause and unconstitutional, making the bags he threw down after fruit of an illegal arrest and inadmissible as evidence.
La.C.Cr.P. Art. 215.1 addresses investigatory stops and provides:
Art. 215.1. Temporary questioning of persons in public places; frisk and search for weapons
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
In State v. Flowers, 441 So.2d 707 (La. 1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984), the Supreme Court addressed the concept of seizure of the person which results when a person is stopped and detained, however briefly, by a police officer. Article 215.1 and the Fourth Amendment, as well as the Louisiana Constitution, require that such a seizure be reasonable and based on a valid investigatory stop. The Flowers court established three criteria to determine whether a seizure *1322 is the result of a valid investigatory stop:
(a) whether the intrusion was an arrest or a stop; (b) whether the stop was of the type which is reasonable in view of the public interest served and the degree of invasion entailed; and (c) whether the particular stop was warranted by a reasonable suspicion based on specific, articulable facts and rational inferences from those facts.
441 So.2d at 713.
The factual situation in the present case (uniformed officers calmly drove up to a public place, got out of their unit, and walked up to an individual requesting to talk), when subjected to an objective evaluation, does not constitute an arrest. The incident constitutes merely an investigatory stop.
The second inquiry is whether the stop was reasonable, balancing the public interest served with the degree of invasion to the person. The officers in this case never physically touched defendant until after the cocaine was discovered. The officers merely followed defendant where he led them, between the parked automobiles. The automobiles were parked four to five feet apart, and Officer Johnson was standing three to five feet away from defendant. The purpose of pursuing defendant was to attempt to investigate possible drug violations. Defendant was in an open public place visible to anyone nearby. Given these facts, we conclude the officer's request for defendant to stop and remove his hand from his pocket was hardly so intrusive as to be unreasonable.
The third inquiry addresses whether a reasonable suspicion based on specific articulable facts and rational inferences exists. The determination of whether an officer had "sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference" is determined from the facts of each case. State v. Belton, 441 So.2d 1195, at 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Some of the factors properly considered to determine whether adequate articulable knowledge exists include an anonymous tip, the nature or reputation of the area as a high crime area, and flight, nervousness, or a startled look at the sight of a law enforcement officer. In State v. Jernigan, 377 So.2d 1222 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), the court found that an anonymous tip could supply sufficient knowledge of facts to justify the detention of the defendant for questioning. In State v. Buckley, 426 So.2d 103 (La.1983), the court held that the nature of the area of suspected criminal activity is relevant to a determination of probable cause and is indeed an articulable fact. The Buckley court defined high crime areas as places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer. Finally, State v. Belton, supra, found as valid factors in the determination of reasonable cause the flight, nervousness, or startled look of the defendant at the sight of a law enforcement officer.
Evidence of all these factors exists in the present case. The officers were given an anonymous tip that someone fitting the general description of defendant was selling narcotics; defendant was present in a high crime area; and defendant started to flee when he noticed the officers' presence. Under a traditional Fourth Amendment analysis, we conclude the officers made a valid investigatory stop, and accordingly, the trial judge properly denied defendant's motion to suppress. The evidence complained of, which had been abandoned by defendant prior to arrest and was in plain sight, was seized pursuant to a valid investigatory stop of defendant.
We discuss also the U.S. Supreme Court's recent pronouncement on Fourth Amendment search and seizure analysis. In California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the court held that for Fourth Amendment purposes no "seizure" has occurred until the suspect is either physically seized or submits *1323 to a show of authority by the law enforcement officer.
We note at the outset that Hodari D. does control Louisiana search and seizure law. This court has cited Hodari D. with approval in State v. Green, 598 So.2d 624 (La.App. 3d Cir.1992). Further, the Louisiana Supreme Court granted a writ in State v. Tucker, 604 So.2d 600 (La.App.2d 1992), writ granted, 609 So.2d 212 (La.1992), a Second Circuit case which found Hodari D. inapplicable to a search and seizure analysis under the Louisiana Constitution. As of this writing, however, a decision has not yet been rendered by the Supreme Court in that case. See also State v. Guilyot, 584 So.2d 1145 (La.1991).
Under Hodari D., the reasonableness of an investigatory stop is not even relevant unless the defendant has been physically seized or submits to a show of authority. In the present case, defendant was not physically seized, nor did he submit to the officers' show of authority, i.e., the requests to stop, talk, and remove his hand from his pocket. The defendant was stopped or detained when the officers blocked his path, but under Hodari D., he was not seized until after he abandoned the cocaine. Accordingly, the cocaine abandoned by the defendant was not the fruit of an illegal seizure and was admissible as evidence.
Therefore, we find that under Hodari D., and under prior Louisiana jurisprudence, the denial of defendant's motion to suppress was proper. For these reasons, the defendant's conviction is affirmed.
AFFIRMED.