634 So.2d 1330 (1994)
STATE of Louisiana
v.
Norman Dean SOLOMON.
No. Cr93-1199.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1331 Keith A. Stutes, Lafayette, for State.
Mark Edward Mouton, Lafayette, for Solomon.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
GUIDRY, Judge.
The defendant, Norman D. Solomon, was charged by bill of information dated November 25, 1992, with the offense of possession of cocaine with intent to distribute, a violation of La.R.S. 40:967. On December 8, 1992, Solomon filed a "Motion to Suppress Evidence". On July 19, 1993, a contradictory hearing was held on defendant's motion. At the conclusion of the evidence and argument, the trial court denied the motion to suppress. On July 20, 1993, the defendant withdrew his "not guilty" plea and entered a plea of "no contest" to the charge. The defendant reserved his right to appeal the trial court's denial of his motion to suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On July 20, 1993, the defendant was sentenced to serve five (5) years at hard labor, to run concurrent with any sentence being served at the time.
From the trial court's denial of defendant's motion to suppress, the defendant appeals, urging two assignments of error. First, he asserts that the trial court erred in denying the motion to suppress because there existed no probable cause or reasonable suspicion to approach, stop, chase, or search him. Second, Solomon requests that we examine the record for errors patent. After a thorough review, no such errors patent were found. Additionally, for the following reasons, we conclude that the trial court did not err in denying defendant's motion to suppress. We affirm his conviction and the sentence imposed.

FACTS
The only witness to testify at the motion to suppress hearing was the arresting officer, Deputy Stan Perkins of the Lafayette Parish Sheriff's Office. Deputy Perkins testified that, at 10:35 p.m. on the evening of October 9, 1992, he and Deputy Sheridan were patrolling the 200 block of Foch Street in Lafayette. The area is noted for extensive drug activity, and Deputy Perkins had made numerous arrests in the area for possession and distribution of crack cocaine. Deputy Perkins was in a marked patrol unit and was wearing a tee shirt with "Metro Narcotics" on the back and his badge on the front.
Deputy Perkins stated that he and Deputy Sheridan noticed the defendant standing alone on the corner, with a large volume of pedestrian traffic in the area. The defendant's left hand was in his front pants pocket "like he was trying to conceal something," possibly a weapon. Deputy Perkins explained that, upon noticing the patrol unit, Solomon began looking nervously from side to side, "like he was going to run". The officers found these actions very unusual. When the deputies exited the vehicle to speak to the defendant, other people in the area moved quickly away from the deputies and the defendant.
When Deputy Perkins attempted to speak to Solomon, he turned and fled at a fast pace. He kept his hand in his pocket as he ran from the area. The deputies did not order the defendant to stop, but followed him on foot. The defendant ran through a back yard and fell over bushes and tree limbs. According to Deputy Perkins, they caught up with Solomon after his fall and told him that *1332 they merely wanted to speak with him. When the defendant began struggling violently with the deputies, they handcuffed him because they believed that he could be carrying a concealed weapon.
The deputies then stood the defendant up and patted him down for weapons. A matchbox was found in defendant's left front pants pocket which Deputy Perkins believed might contain a razor blade. The deputy had previously retrieved razor blades from such boxes during arrests on several occasions. The matchbox contained several tannish colored rocks, which Deputy Perkins believed to be cocaine. The defendant was then arrested.

SUPPRESSION OF EVIDENCE
The defendant contends that the trial court erred in denying his motion to suppress. Specifically, defendant asserts that the deputies had no probable cause to stop or search him and that the cocaine was, therefore, illegally seized. Defendant also contends that he was actually illegally arrested prior to the pat-down search and that the cocaine was seized incident to an illegal arrest.
The Fourth and Fourteenth Amendments to the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974 protect against unreasonable searches and seizures. In defendant's case, the deputies attempted to conduct an investigatory stop, as provided for by La.C.Cr.P. art. 215.1. An investigatory stop constitutes a "seizure" of the individual, even though the purpose of the stop is limited and the detention brief. Terry v. Ohio, 392 U.S. 1, 99 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983). La. C.Cr.P. art. 215.1 allows (1) questioning of a person on reasonable suspicion of criminal activity; and, (2) a weapon search when there is reasonable suspicion of danger to life and limb. State v. Bolden, 380 So.2d 40 (La.1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The officers' right to make such a stop and question the detained individual must be founded on reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Andrishok, supra.
In State v. Flowers, 441 So.2d 707 (La. 1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984), the Supreme Court established the following criteria to determine whether a seizure is the result of a valid investigatory stop:
(a) whether the intrusion was an arrest or a stop; (b) whether the stop was of the type which is reasonable in view of the public interest served and the degree of invasion entailed; and (c) whether the particular stop was warranted by a reasonable suspicion based on specific, articulable facts and rational inferences from those facts.
441 So.2d at 713. See also State v. Balthazar, 617 So.2d 1319 (La.App. 3rd Cir.1993).
Applying this test to the facts in defendant's case, it is clear that the initial intrusion, walking up to the defendant to talk to him, was a stop and not an arrest. The deputies drove up to the defendant in a public place, got out of their patrol unit and approached the defendant to talk. These actions do not constitute an arrest. Later, when the deputies followed the defendant until he fell, Deputy Perkins plainly stated to the defendant that the officers only wanted to talk to him. After Solomon struggled violently, the deputies handcuffed him in the interest of their safety. He was not, at that time, placed under arrest. It is axiomatic that officers making a valid "Terry" investigatory stop can use reasonable force, under the circumstances, to effectuate the stop. A permissible stop, by definition, is a restraint on the suspect's freedom to leave, which can only be accomplished by the application of some measure of police authority. If Solomon had not resisted violently, the handcuffs would not have been necessary.
*1333 In State v. Wade, 390 So.2d 1309 (La.1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981), the police officers "raced their vehicle until they pulled alongside" the fleeing suspect, then stopped their vehicle and jumped out, blocking the suspect's path. The court ruled that this was a valid "Terry" stop, even though a degree of force was used to accomplish the stop. While the degree of force used on Solomon was greater in that his freedom was more restrained that the suspect in State v. Wade, the restraint was reasonable under the circumstances. Solomon was handcuffed after fleeing and after struggling violently with the deputies.
Solomon asserts that he was "arrested for not talking to the police" and, by implication, that every stop and frisk is an arrest. This position is clearly refuted by the language in Terry, supra. The United States Supreme Court held that a stop and frisk is a "seizure" for Fourth Amendment purposes, but does not constitute an "arrest". The court stated:
It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.
Terry, 392 U.S. at p. 16, 99 S.Ct. at p. 1877. Additionally, the court stated:
An arrest is a wholly different kind of intrusion upon individual freedom from a limited search for weapons, and the interests each is designed to serve are likewise quite different. An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person. It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest.
Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.
Terry, at pp. 26-27, 99 S.Ct. at pp. 1882-1883.
La.C.Cr.P. art. 201 states:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
In State v. Bourgeois, 388 So.2d 359, 363 (La.1980), the Louisiana Supreme Court stated:
The statutory definition of "arrest" is keyed to the concept of restraint. It is the circumstances indicating an intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer's statement: "You are under arrest," that are determinative of when an arrest is actually made.
Earlier cases examined the suspect's perception of the circumstances surrounding the detention to determine whether an "arrest" had occurred. See State v. Warren, 283 So.2d 740 (La.1973). More recent jurisprudence indicates that it is the intention of the police officer which determines whether the stop is actually an arrest. State v. Simms, 571 So.2d 145 (La.1990); State v. Wichers, 392 So.2d 419 (La.1981); State v. Bourgeois, supra. In the present case, although Solomon was unquestionably "seized" by the deputies, Deputy Perkins clearly testified that *1334 their intent was to question the defendant and not to formally arrest the defendant. The forcible detention was necessitated by his flight and violent struggle with the deputies. The fact that Solomon was handcuffed does not, in and of itself, establish that an "arrest" occurred at that moment.
Another factor considered in determining whether an arrest has occurred is the length and extent of the detention. In State v. Moreno, 619 So.2d 62 (La.1993), the Supreme Court held that an initially-valid investigatory stop in an airport became an arrest when officers forced a suspect to walk to a second floor interrogation room for a full body search. In this case, the length of detention prior to the pat down search and subsequent arrest was very brief.
Accordingly, we conclude that an "arrest" did not take place prior to the pat down search. The search of the defendant was not conducted pursuant to an illegal arrest.
The second inquiry under Flowers, supra, is whether the stop was reasonable, balancing the public interest served with the degree of invasion to the person. The deputies followed the defendant as he ran from the initial scene, but did not attempt to apprehend the defendant. The officers first attempted to question the fallen defendant, and restrained the defendant only after he became violent. The handcuffing of the defendant was reasonable under the circumstances. It was intended to insure the safety of the deputies during the questioning of the defendant, who was observed running with his hand in his pocket, indicating to the deputies the possible presence of a weapon.
The third inquiry under Flowers, supra, addresses whether the suspicion necessary for a valid stop was reasonable and based on specific, articulable facts and rationally-drawn inferences. This is to be resolved according to the particular facts and circumstances of each case. State v. Belton, supra; Balthazar, supra. Mere suspicion of criminal activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982). Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Balthazar, supra; State v. Hall, 581 So.2d 337 (La.App. 3rd Cir.1991).
In the present case, Deputy Perkins testified that the area in which the defendant was first spotted was notorious for drug activity. Solomon became perceptibly nervous at the sight of the officers. Other persons in the area began walking away from the defendant as the officers approached. Solomon kept his hand in his pocket as the officers approached. He then fled from the presence of the officers with his hand remaining in his pocket.
In State v. Taylor, 363 So.2d 699 (La.1978), and State v. Wade, supra, the Supreme Court found that the presence of the defendant in a high crime area, coupled with nervousness or flight of the defendant, or other suspicious actions of the defendant upon approach by officers, were sufficient factors to justify an investigatory stop.
In defendant's case, the trial court deemed the conduct described by Deputy Perkins as sufficiently suspicious to warrant an investigatory stop. His conduct, combined with the area's reputation for drug activity, provided the officers with specific articulable facts upon which to base an investigatory stop.[1] Pursuant to State v. Wade and State v. Taylor, we conclude that the deputies' suspicions were reasonable under the circumstances to justify the investigatory stop.
Solomon does not contend that the deputies should not have patted him for weapons. Likewise, defendant alleges no error on the *1335 part of the officers in opening the matchbox discovered during the pat down. Therefore, we need not address these issues.
For these reasons, we affirm the defendant's conviction and the sentence imposed.
AFFIRMED.
THIBODEAUX, J., dissents and assigns reasons.
THIBODEAUX, Judge, dissenting.
The reason the deputies approached Solomon was that "a couple of the transactions (presumably drug) could have been possibly made at that corner." Deputy Perkins candidly admitted, however, that they did not see any such activity occurring at that time.
The defendant, Deputy Perkins observed, had his hand in his "left front pants pocket like he was probably trying to conceal something, maybe a weapon of some sort." However, the officer admitted that the defendant's hand came out of his pocket and the deputy was not able to observe any objects in his hand. He observed this at the point at which he approached the defendant to talk to him and the defendant fled. The defendant moved away at a very fast pace. The deputies pursued Solomon through a back yard and, after apprehending him, held him by his wrist and handcuffed him because he could have been concealing a weapon such as a knife, gun, or razor blade. They then retrieved a matchbox from his pocket because it could have contained a razor blade. The deputy's belief was premised on his previous experience, he claimed, in retrieving razor blades from matchboxes during arrests on other occasions. The matchbox contained several pieces of crack cocaine.
On cross-examination, Deputy Perkins admitted that the defendant was not engaged in any criminal activity, no drug transactions were being made, and no drugs were observed on defendant's person or in defendant's hand. There is no indication in the record that Perkins knew of prior criminal activity by Solomon. Deputy Perkins claimed he simply stopped and exited his car to speak with the defendant, not to stop him. He chased Solomon because "a crime could have taken place in the area." He did not articulate any reason for this belief. Presumably, it was based on his observation that the area being patrolled was a high crime area.

LAW AND ANALYSIS
The fourteenth amendment to the United States Constitution and article 1, section 5 of the Louisiana Constitution immunize citizens from unreasonable searches and seizures. Law enforcement personnel may stop and question one reasonably suspected of criminal conduct on the basis of an investigatory stop sanctioned by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and La.Code Crim.P. art. 215.1. That article states in pertinent part:
Art. 215.1. Temporary questioning of persons in public places; frisk and search for weapons
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
Reasonable cause is less than probable cause, but more than mere suspicion and must be analyzed on an individual, case-by-case basis to determine if the right of privacy guaranteed by our federal and state constitutions has been violated. The criterion for reasonable cause is the "totality of the circumstances." State v. Belton, 441 So.2d 1195 (La.1983); State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993). Also, the reasonableness of an officer's conduct must be judged by balancing the harm of invasion versus the need to search or seize. State v. Williams, Id.; State v. Scott, 566 So.2d 394 (La.1990). Furthermore, the officer must have articulable knowledge of particular facts *1336 from which he can reasonably infer that past, present or future criminal activity exists. State v. Thibodeaux, 531 So.2d 284 (La.App. 3d Cir.1987); State v. Bickham, 404 So.2d 929 (La.1981).
What articulable knowledge of particular facts did Officer Perkins have to believe that Solomon was committing, had committed, or was about to commit an offense? See, La. Code Crim.P. art. 215.1(A). As State v. Williams, supra 621 So.2d at 201, stated:
"In Louisiana, it is well-settled that police cannot actively create street encounters... unless they have articulable knowledge of suspicious facts and circumstances to allow them to infringe upon the suspect's right to be free from governmental interference."
In this case, the officer, accompanied by a partner, noted these observations: (1) he was patrolling in an area noted for drug activity; (2) he noticed the defendant standing alone on a street corner; (3) the defendant appeared nervous; and, (4) the defendant acted like he was "probably trying to conceal something." These circumstances are not sufficient to give rise to reasonable cause. Balanced against these factors are the additional observations of Deputy Perkins: (1) that no drug transactions or otherwise illicit activity was occurring at the time; (2) he did not observe any illegal objects on defendant, even after the defendant fled and his hand had come out of his pocket; and, (3) that, even before flight, he, Deputy Perkins, was very equivocal, at best, in saying that Solomon acted like he was probably trying to conceal something. Solomon was chased because "a crime could have taken place in the area." That reasoning is woefully insufficient to justify an infringement on a person's right to be let alone.
When police officers initiate an investigatory stop without the legal right to do so, property seized cannot be used for several reasons. The original stop itself was unjustified. Also, as succinctly stated in State v. Hunter, 375 So.2d 99, 101-102 (La.1979), (quoted in and relied on in State v. Thibodeaux, supra):
"While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a `reasonable prudent man ... would be warranted in the belief that his safety or that of others was in danger.' Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's believe is not reasonable unless the officer is `able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.' (Citation omitted). It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a `substantial possibility' of danger." (Citation omitted).
The officer did not see a weapon of any sort. When the defendant was apprehended, he was handcuffed because, the officer testified, he could have been concealing a weapon. He retrieved a matchbox containing the drugs because it "could have contained" a razor blade. What "sufficient possibility" of danger existed if the accused was handcuffed in the presence of at least four other police officers?
In State v. Thibodeaux, supra, the defendant was accosted in a high crime area sitting in front of a closed bar which had a notorious reputation for drug transactions. The officer seized a black object in defendant's hand which contained cocaine. The third circuit suppressed the evidence, observing that the situation was very similar to the one presented in State v. Fleming, 457 So.2d 1232 (La.App. 1st Cir.), writ denied, 462 So.2d 191 (1984). In Fleming, the location of the stop was a high crime area occasioned by drug transactions and the defendant and others were congregating in that area. In both Fleming and Thibodeaux, the court suppressed the evidence, concluding that "the mere presence of a group of citizens at a notorious corner is, of itself, insufficient to justify an investigatory stop. State v. Thibodeaux, *1337 supra 531 So.2d at 286 (quoting State v. Fleming, supra).
Deputy Perkins stated that he did not intend to stop the defendant. He only intended to speak with him. How could he "speak" with Solomon if he did not intend to detain or stop him? And, if Deputy Perkins did not intend to stop the accused, why pursue him, especially after observing no criminal activity whatsoever? As in Fleming and Thibodeaux, the stop was legally impermissible because police officers do not have the right to stop someone at will in a high crime area.
The officer needed more than a hunch or suspicion to conduct this investigatory stop. See, State v. Williams, supra 621 So.2d at 201. Flight, nervousness, furtive gestures, startled behavior, or sight of a police officer are not, in and of themselves, sufficient to justify an investigatory stop. More articulable knowledge of concrete facts leading to reasonable cause is needed. In this case, it is lacking. As Judge Culpepper noted in State v. Thibodeaux, supra 531 So.2d at 287, "plainly, [the officer] was merely fishing for evidence."
For the foregoing reasons, I respectfully dissent.
NOTES
[1] The Circuit Courts of Appeal have not consistently found that the factors present in Taylor and Wade were sufficient, within the context of their particular cases at issue, to justify an investigatory stop. These factors were determined to be sufficient in State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991), and State v. Scott, 561 So.2d 170 (La.App. 1st Cir.1990), writ denied, 566 So.2d 394 (La.1990). For a contra result, see State v. Simien, 590 So.2d 603 (La.App. 3rd Cir.1991), and State v. Williams, 572 So.2d 756 (La.App. 4th Cir.1990), writ denied, 576 So.2d 30 (La.1991).