JiKNOLL, Judge.
Defendant, Albert Jones (Jones), was tried by jury and convicted for possession of cocaine pursuant to LSA-R.S. 40:967(C). The district court sentenced Jones to thirty-six months at hard labor. From this conviction and sentence, defendant presents three assignments of error for appeal: (1) the trial court erred in not suppressing the evidence seized from the defendant at the time of his arrest; (2) the verdict is not supported by the weight of the evidence to prove beyond a reasonable doubt that the defendant knowingly and willfully possessed or attempted to possess a controlled dangerous substance; and (3), the trial court erred in imposing a sentence on the defendant which was excessive, considering his past criminal record and the amount of cocaine actually found in the defendant’s possession.[1] We affirm and remand with instructions.
hFacts
The record shows the following facts. On November 30, 1993, at approximately midnight, Alexandria Police Officers Johnson and Bruce were driving in their police cruiser along Seventh Street, a high crime and drug area in Alexandria, when they spotted the defendant, Albert Jones. Upon observing Officers Johnson and Bruce, Jones hastily fled, running in the direction of Eighth Street, toward a vacant lot. After watching Jones run away from them, Officer Johnson radioed for assistance to Alexandria Police Officers Fairbanks and Laborde, who were then sitting in their police cruiser parked one block away in front of a vacant lot on Eighth Street. In his radio communication, Officer Johnson informed Officer Fairbanks that a black male wearing dark jeans and a dark jacket was fleeing in the direction of Eighth Street by means of a vacant lot, and had done so immediately after seeing police cruiser. After spotting the defendant running toward them through the vacant lot, Officers Fairbanks and Laborde exited their vehicle. With lighted flashlights drawn, they began running toward the defendant.
During the ensuing footchase, the officers identified themselves to Jones and commanded him to stop and get face down on the ground. However, the defendant, then approximately twenty-five to thirty feet away from the officers, only slowed his rapid pace enough to cast aside a shiny chrome crack pipe with a scorched blackened end and a clear plastic bag containing a substance that resembled crack cocaine. Moments later, Officer Laborde and Officer Bruce apprehended the defendant while Officer Fairbanks retrieved the defendant’s abandoned objects. After the defendant’s abandoned objects were identified by Officer Fairbanks as drug contraband, the|3defendant was then arrested. Thereafter, Officer Fairbanks secured the contraband and placed it in a properly marked evidence envelope.
Later, the shiny chrome crack pipe with the scorched blackened end and the clear plastic bag containing a substance that resembled crack cocaine were tested for the presence of crack cocaine. The residue on the crack pipe tested positive for cocaine, but the substance in the clear plastic bag tested negative. Instead, the substance in the clear plastic bag was identified as “foogaboom” — a counterfeit crack cocaine usually made of soap, candles, or any other non-narcotic substances suitable to fool drug purchasers. On January 18,1994, based upon the presence of the cocaine residue found in the crack pipe, the defendant was charged by bill of information with possession of crack cocaine.
On March 29, 1994, the defendant filed a motion to suppress physical evidence. This motion was set for hearing and denied on May 3, 1994. On May 17-19, 1994, the defendant was tried by jury and convicted for possession of cocaine. During the trial, after proving a sufficient chain of custody, the state introduced the crack pipe and plastic bag into evidence. The state also placed into *266 evidence the laboratory report showing that the crack pipe tested positive for the presence of cocaine residue. Officer Fairbanks testified at trial and described the events leading to the defendant’s arrest. After presentation of the state’s case-in-chief, the defendant chose not to testify. The defendant was sentenced on June 3, 1994 and his motion to reconsider the sentence was denied on June 17, 1994.
Assignment of Error # 1: Motion to Suppress
The defendant contends that the district court erred when it denied his motion to suppress the physical evidence abandoned by him during the investigatory stop. He argues that the investigatory stop evolved into an unlawful arrest without probable |4cause pursuant to the holding of State v. Tucker, 626 So.2d 707 (La.1993).
The lawful seizure of abandoned property recovered during an investigatory stop or an arrest depends upon the existence of either a reasonable suspicion or a reasonable cause. See LSA-C.Cr.P. Art. 213 and 215.1 Because the reasonable suspicion needed to conduct a lawful investigatory stop is something less than the probable cause needed for a lawful arrest, it is important to determine whether the property in question was abandoned during an investigatory stop or during an arrest.
In Tucker, the Louisiana Supreme Court held that an investigatory stop could rise to the level of an arrest when an arrest was “virtually certain” to occur. The court promulgated six factors useful for reaching this determination: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of the police officers involved in the encounter. Id. at 712. After weighing these factors, the court in Tucker concluded that the distance of “several feet” between the defendant and the police when the defendant abandoned property, the camouflaged darkness of the night, and the availability of areas to conceal himself in the urban environment of the City of Shreveport precluded a finding that an arrest of the defendant had been “virtually certain” to occur. Id. at 713.
Likewise, the facts of this case also suggest that it was not “virtually certain” or imminent that an arrest of the defendant was going to occur. Jones had a lead of over twenty-five feet when he discarded and abandoned the drug contraband. Jones was also in an open field in the dark hour of midnight wearing dark clothing, and he |5presumably had ample areas available to him for the purpose of concealing himself from the police. Therefore, we conclude that an arrest of Jones during this investigatory stop was not “virtually certain” to occur.
The investigatory stop initiated by the officers in this ease only evolved into an arrest after Jones provided the probable cause by abandoning and discarding drug contraband. Probable cause to arrest exists when the facts and circumstances known to the arresting officer and of which he has reasonable, trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Moreno, 619 So.2d 62 (La.1993). The determination of probable cause involves factual and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Ogden, 391 So.2d 434 (La.1980).
The right of law enforcement officers to stop and interrogate persons reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure article 215.1 and both state and federal jurisprudence. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983); State v. Chopin, 372 So.2d 1222 (La.1979). However, an investigatory stop must be based upon reasonable cause sufficient to believe that the individual has been, is, or is about to be engaged in criminal conduct. LSA-C.Cr.P. Art. 215.1; State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 *267 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Absent a warrant, the state has the burden of proving the presence of reasonable cause for the investigatory stop. LSA-C.Cr.P. Art. 703(D).
The reasonable cause needed to justify an investigatory stop is something less than the probable cause needed for an arrest, depending upon the facts of each case. | fiThe officer must have sufficient knowledge of particular facts to reasonably suspect the individual of criminal activity to justify infringement of the individual’s right to be free from governmental interference. State v. Belton, supra. The totality of the circumstances must be considered in determining whether reasonable cause exists. Id. (citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
The nature or reputation of the area of suspected criminal activity is relevant to a determination of reasonable cause; it is an important articulable fact upon which an officer may legitimately rely. Areas known to be high crime areas are places where the character of the area gives color to conduct which might not otherwise arouse the suspicion of the police. State v. Buckley, 426 So.2d 103 (La.1983). In addition, a police officer’s experience and training may be considered in deciding whether he made reasonable inferences from the facts at hand. See State v. Bordelon, 538 So.2d 1087 (La.App. 3d Cir.1989); State v. Fikes, 616 So.2d 789 (La.App. 2d Cir.1993).
While flight, furtive gestures, nervousness, or a startled look at the sight of a law enforcement officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious, and therefore may be one of the factors leading to a finding of reasonable cause. State v. Balthazar, 617 So.2d 1319 (La.App. 3d Cir.), writ denied, 625 So.2d 170 (La.1993).
Given the defendant’s rapid flight immediately upon seeing Officers Johnson and Bruce approaching him in their police cruiser, the defendant’s presence in a well known high crime and drug area, and the arresting officers’ past experience and training in narcotics law enforcement, as supported by the record, we conclude that there was reasonable cause for the officers to initiate an investigatory stop of the ^defendant. As expressed by the Fourth Circuit in State v. Ganier, 591 So.2d 1328 (La.App. 4th Cir. 1991):
Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not the case of a man merely standing on a street corner who is detained by the police simply because he is there.
Id. at 1330.
Evidence abandoned by a defendant during a lawful investigatory stop may be lawfully seized.
When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. If, however, property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the “right to be left alone” is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Andrishok, supra; State v. Chopin, supra; State v. Ryan, 358 So.2d 1274 (La.1978).
State v. Belton, 441 So.2d at 1199. It is clear that Jones abandoned property during a lawful investigatory stop. We find that the discarded evidence was properly seized. We also find that there was sufficient probable cause to arrest the defendant. Accordingly, the district court properly denied the defendant’s motion to suppress the abandoned *268 drug contraband. Thus, this assignment of error lacks merit.
Assignment of Error #2: Sufficiency of the Evidence
In his second assignment of error, the defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he intended to possess |8cocaine in violation of LSA-R.S. 40:967(C). Specifically, he claims that there was insufficient evidence showing that he possessed the cocaine knowingly or intentionally.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983) (citing State v. Richardson, 425 So.2d 1228 (La.1983)).
To convict a defendant for possession of cocaine pursuant to LSA-R.S. 40:967(C), the state must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed a controlled dangerous substance classified in Schedule II of LSA-R.S. 40:964. Determination of whether there is “possession” sufficient to convict depends on the peculiar facts of each case. State v. Trahan, 425 So.2d 1222 (La. 1983); State v. Cann, 319 So.2d 396 (La. 1975). Guilty knowledge is an essential element of the crime of possession of drug contraband and such knowledge or intent may be inferred from circumstantial evidence. State v. Edwards, 354 So.2d 1322 (La.1978); State v. Mims, 330 So.2d 905 (La. 1976). Whether the accused knew the substance was a narcotic drug is a matter of proof by direct or circumstantial evidence. State v. Perique, 340 So.2d 1369 (La.1976).
|9In the case sub judice, the state proved Jones’ guilty knowledge using circumstantial evidence. When the state uses circumstantial evidence to prove an element of a crime, it must exclude every reasonable hypothesis of innocence in order to convict. LSA-R.S. 15:438. However, when reviewing the sufficiency of circumstantial evidence used by the state to prove an element of a crime, a stricter standard than that contained in Jackson v. Virginia, supra, is not required. State v. Wright, 445 So.2d 1198 (La. 1984). Rather, the reviewing court simply evaluates the circumstantial evidence in the light most favorable to the prosecution and determines if any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817, 821 n. 6 (La.1987); State v. Fisher, 628 So.2d 1136 (La.App. 1st Cir.1993), writs denied, 94-226 and 94-321 (La. 5/20/94), 637 So.2d 474 and 637 So.2d 476.
A conviction for possession of controlled dangerous substances may rest on the possession of mere traces or residue of the substance. See State v. Fontenot, 578 So.2d 1032 (La.App. 3rd Cir.1991), writ denied, 582 So.2d 1305 (La.1991); State v. Spates, 588 So.2d 398 (La.App. 2d Cir.1991); State v. White, 535 So.2d 929 (La.App. 2d Cir.1988), writ denied, 537 So.2d 1161 (La. 1989). However, the amount of drug contraband seized has some bearing on a defendant’s guilty knowledge, especially when there are no other corroborating circumstances. State v. Trahan, supra; State v. Spates, supra; accord, State v. Fontenot, supra.
In State v. Trahan, supra, the Louisiana Supreme Court confronted the issue of whether the state had presented sufficient evidence to convict two defendants, Trahan and Leleaux, for possession of trace amounts of cocaine. Notably, the defendants’ possession was premised upon constructive rather than actual physical possession because the drug contraband was not recovered from either defendants’ hoperson, but from defendant Trahan’s bedroom in a trailer home rented by defendant Leleaux. 425 So.2d at *269 1226. After searching Trahan’s bedroom, the police seized a small vial containing trace elements of cocaine. The police also seized a material commonly used for cutting cocaine. The amount of cocaine residue found in the vial was so small that it was entirely consumed after testing for its presence; the vial was also lost prior to trial. Leleaux testified that he knew nothing about the vial or its contents and Trahan did not testify at trial. The Louisiana Supreme Court reversed the convictions, finding insufficient evidence of the defendants’ guilty knowledge.
In State v. White, supra, the defendant was convicted of possession of PCP. The defendant fled from law enforcement officials before he was arrested. While conducting a search incidental to the defendant’s arrest, the police seized a glass tube containing trace amounts of PCP from the defendant’s jacket pocket. When asked about the glass vial, the defendant told the police that they “didn’t have nothing on him” because there was not enough PCP in the glass vial for them to test. Although consuming the entire amount of the drug contained in the glass vial, tests confirmed that the vial contained PCP. The Second Circuit affirmed the defendant’s conviction, finding that there was enough corroborating evidence of the defendant’s guilty knowledge to distinguish its case from Tra-han.
In State v. Fontenot, supra, this court affirmed a defendant’s conviction for possession of trace amounts of cocaine. After performing a custodial search of the defendant for a non-drug related offense, police seized a small crack pipe taped to the inside of the defendant’s underwear. Tests performed on the crack pipe revealed the presence of cocaine residue. At trial, the defendant testified that he was only holding the pipe for a friend. However, based upon his former experience as an undercover agent for the Cal-casieu Parish sheriff’s office, the defendant freely admitted that the | npipe was used for smoking crack cocaine. He also stated that he knew that the pipe did not contain any visible crack cocaine. This court affirmed the conviction, finding that a reasonable trier of fact could have concluded beyond a reasonable doubt that the defendant knowingly possessed cocaine. Fontenot, 578 So.2d at 1034-35.[2]
In State v. Spates, supra, the defendant was convicted for possession of a trace amount of cocaine found on a piece of radio antenna converted into a special crack pipe called a “straight shooter.” In Spates, the defendant submitted to a search without flight and made no inculpatory statements to the police or at trial. The Second Circuit affirmed the defendant’s conviction, finding that the defendant’s mere physical possession of a device without any utility other than the ingestion of crack cocaine was, when presented in a light most favorable to the prosecution, enough evidence to support a conviction for possession of cocaine beyond a reasonable doubt. Spates, 588 So.2d at 402. In reaching its conclusion, the Second Circuit correctly held that the factual situations in Spates, White, and Fontenot were distinguished from the situation in Trahan because Spates, White and Fontenot&ddressed actual physical possession of drug contraband, rather than constructive possession as did the court in Trahan. Id.
Like the courts in Spates, White, and Fontenot, we are also presented with a factual situation distinguishable from the Supreme Court’s holding in Trahan because this case addresses sufficiency of the evidence for a conviction based upon actual physical possession, rather than constructive possession of drug contraband. Notwithstanding this distinction, Jones’ guilty knowledge and intent to possess drug | i2Contraband in the present case is further corroborated by his flight,[3] like the defendant in White.
*270 Additionally, we are also persuaded by the reasoning of the Second Circuit in Spates. Physical possession of an instrument with no utility other than the ingestion of crack cocaine is sufficient under the Jackson v. Virginia standard to support a conviction for possession of cocaine. Therefore, this assignment of error is meritless.
Errors Patent
Our review of the record reveals two errors patent. First, during sentencing, the defendant was not advised of the prescriptive period for post-conviction relief. Second, the defendant was not given credit for time served.
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows that the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and is not grounds to reverse the sentence or remand the case for resentencing. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Arts. 914 or 922. Thus, prescription in this case has not yet begun. Because the purpose of the Article 930.8(C) notice is to inform the defendant of the prescriptive period in advance, the | ^district court is hereby directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record of the proceedings that the defendant received the notice. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.), writ denied, 623 So.2d 1334 (La.1993).
LSA-C.Cr.P. Art. 880 provides that when imposing sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, the defendant’s sentence is hereby amended to reflect that the defendant is given credit for time served prior to the execution of the sentence. See LSA-C.Cr.P. Art. 882(A). Resentencing is not required, however, this case is remanded and the district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1st Cir.1992), writ denied, 612 So.2d 79 (La. 1993).
AFFIRMED AS AMENDED AND REMANDED WITH INSTRUCTIONS.

. Because defendant failed to brief his third assignment of error, it is abandoned and we will not consider it on appeal. Uniform Rules-Courts of Appeal Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La. 1982).

. But see this author's dissent where I suggest that in the absence of corroborating evidence, mere physical possession of trace or microscopic amounts of drug contraband alone may not be enough to prove intent or guilty knowledge beyond a reasonable doubt. Fontenot, 578 So.2d at 1035-36.

. While an individual's flight does not in and of itself indicate any guilt, it can be considered as circumstantial evidence that one has committed an offense. State ex rel. Womack v. Blackburn, 393 So.2d 1216 (La.1981). Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt *270 and, therefore, is one of the circumstances from which a jury may infer guilt. State v. Davies, 350 So.2d 586 (La.1977).