693 So.2d 316 (1997)
STATE of Louisiana
v.
Kenneth Wayne CHARK.
No. CR96-1667.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
Charles F. Wagner, Dist. Atty., J. Stanley Goodwin, Alexandria, for State.
John Michael Lawrence, for Kenneth Wayne Chark.
Before SAUNDERS, WOODARD and AMY, JJ.
WOODARD, Judge.
The defendant was convicted of possession of a controlled dangerous substance, in violation *317 of La.R.S. 40:967(C). The defendant appeals his conviction alleging that the evidence used against him should have been suppressed. We agree and, thus, reverse.

FACTS
On March 6, 1996, Officers Stacy Bender and Felix Drewitt of the Rapides Parish Sheriff's Office were on patrol in a squad car. The officers first saw the defendant, Kenneth Wayne Chark, at the corner of Levin and Prospect streets in Alexandria, Louisiana in Rapides Parish, at approximately 11:30 p.m. At the time, the defendant was leaning against a tree and was wearing a black jogging suit and tennis shoes. When the defendant saw the police car, he walked away from the tree and approached his bicycle. Officer Bender drove up beside the bicycle, exited the police unit and began questioning him. He told Officer Bender that he was visiting a friend who lived nearby. At that time, Officer Bender noticed that the defendant's fist was clenched. The officer inquired about what the defendant was holding, to which the defendant replied that he did not have anything. Officer Bender asked the defendant to show him what the "nothing" was, and the defendant opened his hand to reveal four rocks of cocaine.
On April 11, 1996, the defendant was charged by bill of information with possession of a controlled dangerous substance with intent to distribute, a violation of La.R.S. 40:967 A. He appeared in court with counsel on June 6, 1996, waived formal arraignment, and pled not guilty. On July 11, 1996, he filed a Motion to Suppress the evidence which the trial court denied on September 23, 1996.
Subsequently, the defendant withdrew his former plea and entered a Crosby plea of guilty to a lesser charge of possession of a controlled dangerous substance. On September 24, 1996, the trial court sentenced him to four years at hard labor, suspended the sentence, and imposed probation of three years. The defendant appeals his conviction and alleges one assignment of error; namely, that the trial court erred by not granting his Motion to Suppress Evidence.

LAW
The defendant contends that the trial court erred in not granting his Motion to Suppress and in allowing the drug evidence that was introduced at trial in support of his arrest to be admitted. The defendant argues that the officers did not have sufficient reasonable suspicion to justify their initial "stop," and therefore, any evidence derived from the stop should be suppressed. In response, the state asserts that the officers' encounter with the defendant did not constitute a "stop" under the Fourth Amendment, and in the alternative, that should this court conclude that the officers did "stop" the defendant, the officers had the requisite reasonable suspicion necessary to justify their conduct. For the following reasons, this assignment of error has merit.
The facts are that two officers confronted a lone individual in order to investigate possible criminal activity. Officer Bender testified that, based on the defendant's black clothing and alleged attempts to conceal himself, they suspected that the individual was a burglar. Further, and without any basis, the officers also suspected that the bicycle in the defendant's possession was stolen property. At trial, Officer Bender stated:
I ... I didn't have any probable cause to believe he had done anything illegal. I just had a suspicion that possibly something illegal was happening.
.....
[It was] [b]ecause of the time of night, the location, the subject's dress and his motions upon seeing us come down the road in our unit.
The officer, however, did not describe with particularity the "motions" of the defendant to which he was referring. Although Officer Bender stated that he merely requested that the defendant talk with him after the defendant was stopped, the facts establish that the officer requested that the defendant reveal what he was holding in his hand. These actions support a determination that the defendant had been stopped within the meaning of the Fourth Amendment.
Our careful review of the record establishes that a "stop" of the defendant did *318 occur in the present case. In State v. Tucker, 626 So.2d 707 (La.1993), the supreme court held that an encounter is a "stop" when an individual submits himself to a police show of authority. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that an investigatory stop of an individual constitutes a "seizure" of that individual, even though the purpose of the stop is limited and the detention is brief. Furthermore, this court has generally classified encounters by police that were similar to that which occurred in the case sub judice as "stops." See State v. Livings, 95-251 (La.App. 3 Cir. 11/15/95); 664 So.2d 729, writ denied, 95-2906 (La.2/28/96); 668 So.2d 367; State v. Solomon, 93-1199 (La.App. 3 Cir. 3/2/94); 634 So.2d 1330; State v. Thibodeaux, 531 So.2d 284 (La.App. 3 Cir.1987).
Based on our determination that a stop of the defendant, did occur, the next issue for this court to consider is whether the officers had reasonable suspicion that an offense is in the process of being committed, or has been committed, or is about to be committed in order to legally stop the defendant. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person, and the Fourth Amendment requires that the seizure be "reasonable." State v. Flowers, 441 So.2d 707 (La. 1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476, (1984), cert. denied, 475 U.S. 1132, 106 S.Ct. 1661, 90 L.Ed.2d 204 (1986), (citing United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). Furthermore, the Fourth Amendment requires that a detaining officer have knowledge of specific, articulable facts which, when taken together with rational inferences from those facts, reasonably warrant a stop. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; State v. Brown, 370 So.2d 547 (La.1979). Reasonable cause for an investigatory stop is something less than probable cause, but, as stated above, it does require the detaining officer to have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity. State v. Hathaway, 411 So.2d 1074 (La.1982). Because the limited nature of a stop is less intrusive than a traditional arrest, a stop may be justified on facts that do not amount to the probable cause required for an arrest. Flowers, 441 So.2d 707. Lastly, the totality of the circumstances must be considered in determining whether reasonable cause exists. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621.
The record in this case does not support a finding of reasonable suspicion on the part of the officers to justify their stop of the defendant. In Thibodeaux, 531 So.2d 284, this court reversed a trial court's finding that an officer had reasonable suspicion for a stop. In Thibodeaux, the defendant was sitting in front of a closed bar with several other people in what was designated as a "high crime area." Id. When an officer patrolling the area approached the group, several of its members began to walk away. The officer then saw what appeared to be a sharp object in the defendant's hand but, as he approached the defendant, the officer realized that it was a finger nail file. The officer then observed a black object in the defendant's left hand and asked the defendant what it was. The defendant turned away from him, at which point he grabbed the defendant's hand and seized the object, which turned out to be a calculator pouch containing cocaine. On appeal, this court stated:
No reasons to believe criminal activity was being conducted are given. The officer stated that after he began approaching the group he noticed a sharp shiny object in the defendant's left hand, but realized before reaching the group that it was only a nail file. Therefore, this was not a reason to suspect criminal activity.
Id. at 285. Furthermore, even though the officer in Thibodeaux had written in his supplemental report that "the small zip lock plastic bags are commonly used to transport and carry the white powder known as cocaine," Id. at 286, this court stated:
[T]he officer gave no reasons why he should believe the small black case in the defendant's right hand contained a weapon or contraband, instead of a calculator. He did not frisk the defendant for weapons *319 until after seizing the case and discovering the cocaine, and did not state that he believed himself to be in any danger.
Id. at 285.
In similar cases where stops were held to be valid by this court, we have generally upheld the stop based on more compelling factors than those present in this case. For example, in Livings, 664 So.2d 729, a sheriff's deputy was notified over his radio that an individual, whose description matched that of the defendant, and another male were standing in a high drug traffic area. According to the report, one of the men was in possession of a large amount of drugs. When the deputy approached the two men, he noticed that the defendant was "acting very nervous and attempting to conceal something." Id. at 733. Based on the defendant's behavior, the deputy feared that he could have a weapon. While conducting a pat down for weapons, the deputy felt a crack pipe in the defendant's pants. This court held that the circumstances were sufficient to provide the officer with reasonable suspicion for a valid stop and frisk based on the informant's tip, the high drug traffic area, and the defendant's nervousness.
Similarly, in State v. Jones, 94-1261 (La. App. 3 Cir. 5/17/95); 657 So.2d 262, two officers on patrol observed the defendant in an area known for drug activity. The defendant "hastily fled" when he saw the officers. Id. at 265. They did not pursue the defendant but instead radioed for assistance. Subsequently, the defendant was arrested by two other officers. However, during the chase that ensued when the officers attempted to stop the defendant, the officers saw the defendant throw down a crack pipe and a bag of cocaine. This court found that the defendant's "rapid flight" at the approach of two police officers, his presence in a "well known high crime and drug area," and the "arresting officer's past experience and training in narcotics law enforcement" were specific articulable facts which supplied the officers with the requisite reasonable suspicion for the stop. Id. at 267.
In State v. Solomon, 93-1199 (La.App. 3 Cir.1994); 634 So.2d 1330, two sheriff's deputies were on patrol in an area known for drug activity when they saw the defendant standing alone on a corner. The deputy testified that "[t]he defendant's hand was in his front pants pocket, `like he was trying to conceal something,'" and that he became nervous and looked as if he was about to run when he saw the patrol unit approach. Id. at 1331. When one deputy attempted to speak to him, the defendant fled, while keeping his hand in his pocket. The deputies followed the defendant, catching him when he fell over bushes and tree limbs. The deputies testified that they informed the defendant "that they merely wanted to speak with him," but that the defendant "began struggling violently," and they "handcuffed him because they believed that he could be carrying a concealed weapon." Id. at 1331-32. This court found that the defendant's response to the appearance of the officers and the "area's reputation for drug activity" gave the officers reasonable suspicion necessary to justify the stop. Id. at 1334.
In the present case, Officer Bender testified that he and his partner decided to stop the defendant after they saw the defendant walk away from a tree as their unit drove down the street. Officer Bender indicated that the defendant's mode of dress, the time of night, and the fact that the area in which the stop occurred was a high crime area were the factors that led to his "suspicion that possibly something illegal was happening." Officer Bender testified that, in previous years, subjects who sell narcotics often hide behind trees or bushes and wait for cars to stop before they approach the drivers. The officer did not, however, offer any testimony regarding any extensive knowledge on his part regarding cocaine dealing.
In addition, the officer testified that when the defendant approached the bicycle, he did not make any movements that caused the officer to be concerned. In fact, the officer testified that the defendant was "just standing" by the tree, and was "visible as a result of street light" as the officers approached in the police vehicle. Officer Bender further testified that the defendant did not run to the bicycle, but walked at a "regular pace." Furthermore, and most importantly, the officer did not see the defendant's closed *320 fist until after the defendant had been detained. The fact that Officer Bender cited three distinct reasons for approaching the defendant, i.e. that he was uncertain whether the defendant owned the bicycle, that he suspected the defendant may be a burglar, and that he suspected the defendant was trafficking in drugs, establishes that the officers stopped the defendant based on a generalized suspicion or "hunch" regarding the defendant's possible involvement in criminal activity. Stopping an individual based on a hunch or generalized suspicion is impermissible, as a police officer is required to have a particularized suspicion based on articulable facts. La.Code Crim.P. art. 215.1; State v. Thompson, 543 So.2d 1077 (La.App. 2 Cir.), writ denied, 551 So.2d 1335 (La.1989); Thibodeaux, 531 So.2d 284. Therefore, having found that the officers did not have the requisite reasonable suspicion for the stop, the evidence in this case should have been suppressed.
Based on our review of the aforementioned cases, the factors articulated by Officer Bender were insufficient to establish the reasonable suspicion necessary to detain the defendant, and, therefore, the trial court's denial of the defendant's Motion to Suppress was an abuse of discretion.

CONCLUSION
The trial court erred in denying the defendant's Motion to Suppress and in allowing the evidence at trial. This court, therefore, reverses the conviction, vacates the sentence and remands for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
AMY, J., dissents.